**AKERMAN LLP**
O. MISHELL PARRENO TAYLOR (SBN 246850)
mishell.taylor@akerman.com
KEVIN FINLEY (SBN 318193)
kevin.finley@akerman.com
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 688-9500
Facsimile:  (213) 627-6342

Attorneys for Defendant
ALLIANCEONE INCORPORATED

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JNECIA MONIQUE MCCLENTON, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>ALLIANCEONE INCORPORATED; and DOES 1 through 20, inclusive,<br><br>          Defendants. | Case No.  **'22CV1180 MMA BLM**<br><br>**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1132. 1441. 1446. AND 1453**<br><br>[Concurrently filed with Civil Cover Sheet; Corporate Disclosure Statement; Certification of Interested Parties; and Declarations of Kevin Finley and Missy Farnschlader]<br><br>Complaint Filed: May 6, 2022 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT,** ALLIANCEONE INCORPORATED ("Defendant" or "AllianceOne") hereby removes the above-entitled action from the Superior Court of the State of California, County of San Diego, to this United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. This Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, because minimum diversity exists, the proposed class contains at least 100 members,  and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

In support of this removal, AllianceOne states as follows:

## I.  SUMMARY OF COMPLAINT

1. This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of cases. *See* 28 U.S.C. § 1453.

2. On May 6, 2022, Plaintiff J'Necia McClenton ("Plaintiff" or "McClenton") filed an unverified putative Class Action Complaint in the Superior Court of the State of California, in and for the County of San Diego, entitled *JNECIA MONIQUE MCCLENTON, individually and on behalf of all others similarly situated, Plaintiffs, v. ALLIANCEONE INCORPORATED; and DOES 1 through 20, inclusive, Defendants,* Case No.: 37-2022-00017402-CU-OE-CTL ("Complaint").

3. The Complaint alleges nine causes of action on behalf of Plaintiff, a putative class and subclass, under California law for: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to permit rest breaks; (5) failure to reimburse business expenses; (6) failure to provide accurate itemized wage statements; (7) failure to pay wages timely during employment; (8) failure to pay all wages due upon separation of employment; and (9) violation of business and professions code §§ 17200, *et seq.*  Plaintiff defines the putative class as, "[a]ll

**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL**

California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between November 8, 2017 and the date of class certification ("Class"). (Compl., ¶ 20.)  Plaintiff defines a waiting time subclass as, "[a]ll members of the Class who separated their employment with Defendant at any time between November 8, 2018 and the date of class certification ("Waiting Time Subclass"). (Compl., ¶ 21.)

4.      Based on the above allegations, Plaintiff's Complaint is framed as a putative class action and seeks recovery for purported wage and hour violations under California law. Therefore, this matter is a class action as that term is defined pursuant to 28 U.S.C.  § 1132(d)(1)(B) and 1453.[1]

5.      Plaintiff's action was therefore commenced after the effective date of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005), codified at 28 U.S.C. §§ 1332(d), 1453 and 1711-1715.

6.      On June 22, 2022 Plaintiff caused the Summons, Complaint, Civil Case Cover Sheet, ADR Documents, Notice of Case Assignment to be served on AllianceOne via e-mail by Notice and Acknowledgment of Receipt pursuant to section 415.30 of the California Code of Civil Procedure. True and correct copies of the Notice and Acknowledgment of Receipt are attached in the declaration of Kevin Finley ("Finley Decl.") as **Exhibit A**.  True and correct copies of the Summons and Complaint are attached hereto as **Exhibit B** to the Finley Decl. and are incorporated by reference. Exhibits A and B constitute all the pleadings, process, and orders served upon Defendant in the San Diego Superior Court action.

7.      On July 12, 2022, AllianceOne executed and returned the Notice and Acknowledgment of Receipt, and service was deemed complete that day.  True and correct copies of the executed Notice and Acknowledgment of Receipt is attached hereto as **Exhibit C**  to the Finley Decl. and is incorporated by reference.

---

[1] Defendant does not concede, and reserves the right to contest, Plaintiff's allegation that the lawsuit can properly proceed as a class action.

**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL**
65581576;1

8.    On August 10, 2022, AllianceOne caused its Answer to the Complaint to be filed with the San Diego Superior Court and served on Plaintiff's counsel.  A true and correct copy of the service copy of AllianceOne's Answer, which was submitted for e-Filing on August 10, 2022 at approximately 5:36 p.m., is attached hereto as **Exhibit D** to the Finley Decl. and is incorporated by reference.

## II.    THE REMOVAL IS TIMELY

9.    This Notice of Removal is timely in that 28 U.S.C. § 1446(b) requires that a notice of removal in a civil action must be filed within thirty (30) days after service of the summons and complaint.  28 U.S.C. § 1446(b).  Plaintiff filed her Complaint in the San Diego County Superior Court on May 6, 2022.  AllianceOne was served with the Complaint via Notice and Acknowledgment of Receipt on June 22, 2022.  AllianceOne executed and returned the Notice of Acknowledgment and Receipt on July 12, 2022, and service was deemed perfected on that date, pursuant to § 415.30 of the California Code of Civil Procedure.  AllianceOne is filing this Notice of Removal within thirty (30) days of service of the Summons and Complaint.  Accordingly, this Notice of Removal is timely.

10.    No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III.    DIVERSITY JURISDICTION EXISTS

### A.    The Court Has Original Subject Matter Jurisdiction Under CAFA

11.    This lawsuit is one over which this Court has original jurisdiction under 28 U.S.C. 1453 because it is a civil action within the meaning of the Acts of Congress relating to removal of class actions.  *See*  28 U.S.C. § 1453.

12.    This Court has original subject matter jurisdiction based on diversity of citizenship under CAFA, because this matter was brought as a class action, diversity of citizenship exists between one or more members of the putative class and one or more defendants, the number of proposed class members is greater than 100, and the amount placed in controversy by Plaintiff's Complaint exceeds, in the aggregate, $5 million,

exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), 1453.  Removal under diversity jurisdiction therefore is proper pursuant to 28 U.S.C. § 1441, 1446, and 1453.

13.   This action is brought by a putative representative person on behalf of a proposed class and subclass identified as, "[a]ll California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between November 8, 2017 and the date of class certification" and "[a]ll members of the Class who separated their employment with Defendant at any time between November 8, 2018 and the date of class certification." (Compl., ¶¶ 20-21.)  As such, this matter is a purported class action as that term is defined in the CAFA, 28 U.S.C. § 1332(d)(1)(B), and 28 U.S.C. § 1453.

**1.   Diversity of Citizenship Under CAFA Exists Among the Parties.**

14.   To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, such that one putative class member is a citizen of a state different from that of one defendant.  28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010)(finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

a.   Plaintiff is a Citizen of California.

15.   "An individual is a citizen of the state in which he is domiciled . . ."  *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002)(citing *Kanter v. Warner-Lambert Co.*, 265 F. 3d 853-857 (9th Cir. 2001)).   For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000)(citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

16.   Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC,* 652 F.3d 340, 345 (3rd Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).  Once the removing party produces evidence

supporting that presumption, the burden shifts to the other party to come forward with contrary evidence, if any, in order to dispute domicile. *Id.*

17.     AllianceOne is informed and believes that Plaintiff is, and was at the time of the filing of this civil action, a citizen and resident of the State of California.  Declaration of Missy Farnschlader ("Farnschlader Decl."), ¶ 6.  Plaintiff alleges that Plaintiff is a resident of California.  (Compl., ¶ 10.)  During Plaintiff's employment with AllianceOne, Plaintiff provided a home address in California. (Farnschlader Decl., ¶ 7.)  Based on Plaintiff's employment records, Plaintiff was a resident of California throughout Plaintiff's employment with AllianceOne. (*Id.*)  Plaintiff does not allege that Plaintiff was a citizen of any state other than California.  Plaintiff alleges  claims on Plaintiff's own behalf and on behalf of a putative class of California citizens who are and were employed by AllianceOne as non-exempt employees throughout California. (Compl. ¶ 1.)  Thus, AllianceOne has established by a preponderance of the evidence that Plaintiff was domiciled in the state of California, and is therefore a citizen of California for purposes of diversity jurisdiction in this matter.

### b.     AllianceOne is a Citizen of Pennsylvania

18.     Conversely, AllianceOne is not a citizen of California.  For diversity purposes, a corporation "shall be deemed a citizen of any state by which it has been incorporated and of the state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  AllianceOne was, at the time of filing this action, and remains, incorporated under the laws of Delaware. (Farnschlader Decl., ¶ 3.)

19.     AllianceOne has its principal place of business in Pennsylvania. (*Id.*)  The United States Supreme Court has established that the "nerve center" test should be used to determine a corporation's "principal place of business."  *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  A corporation's "nerve center" is normally located where the corporation's officers, direct, control, and coordinate the corporation's activities." (*Id.*)  In other words, a corporation's "principal place of business" can be found where its "brain" is located. (*Id.* at 1193).  This analysis focuses on the place at which the

**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL**

corporation's executive and administrative functions are conducted. *See Indus. Tectronics, Inc. v. Aero Alloy* , 912 F.2d 1090, 1092-93 (9th Cir. 1990); *see also State Farm Fire & Cas. Co. v. Byrd*, 710 F. Supp. 1292, 1293 (N.D. Cal. 1989) (determining "nerve center" by examining, among other factors, where the corporation's headquarters are located and where its principal policy and executive decisions are made). Here, AllianceOne's headquarters and principal business offices are located at 3043 Walton Road, Suite 201, Plymouth Meeting, Pennsylvania 19463. (Farnschlader Decl., ¶ 3.) The majority of AllianceOne's officers and other members of management who direct, control, and coordinate its operations are located throughout the United States, but none of them are located in California. (*Id.*)  All corporate finance decisions are made in Pennsylvania, including operational, executive, administrative and policymaking decisions. (*Id*.)  AllianceOne provides accounting, marketing, human resources, and legal services, along with additional executive and administrative functions, from its headquarters in Pennsylvania. (*Id.*)

20.    Based on the Complaint, therefore, at least one member of the putative class is a citizen of a state different from that of AllianceOne, as the named Plaintiff is a citizen of California, while AllianceOne is a citizen of Pennsylvania. (28 U.S.C. § 1332(d)(2)(A)(requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State from any defendant"). Thus, minimal diversity exists.

21.    Although Plaintiff has listed 20 fictitiously-named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (same).

### 2.    More Than 100 Individuals Are Putative Class Members.

22.    CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members. During the putative class period of November 8, 2017 through the present,

AllianceOne's business records reflect that AllianceOne has employed over 100 individuals as non-exempt, hourly employees in California during the relevant time period alleged in the Complaint, which is the putative class definition and the group in which Plaintiff worked. (Farnschlader Decl., ¶ 8;  *see also* Compl., ¶ 20.)  Accordingly the putative class as alleged contains more than 100 members.

### 3.   The Amount in Controversy Exceeds $5 Million.[2]

23.    Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(6).  A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co.*, *LLC v. Owens*, 135 S. Ct. 547, 551 (2014).

24.    The "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554. "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Id*., quoting H.R. Rep. No. 112-10, p. 16 (2011). Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id*. at 554.   Otherwise, "the defendant's amount-in-controversy allegations should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 553.

25.    Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the applicability of CAFA should be resolved in favor of federal jurisdiction. Sen. Rep. No. 109-14, p. 42 (2005) ("If a federal court is

---

[2] The alleged damages calculations contained herein are for purposes of removal only.  AllianceOne denies that Plaintiff is entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's alleged damages in this case.

uncertain about whether 'all matters in controversy' in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case.").

26.    Where, as here, a plaintiff does not expressly plead a specific amount of damages, a defendant need only make a *prima facie* showing that it is more likely than not that the amount in controversy exceeds $5 million. *Abrego v. Dow Chem. Co.,* 443 F.3d 676, 683 (9th Cir. 2006)(applying the preponderance of evidence standard to complaints filed under CAFA that do not specify a particular amount in controversy); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009).   "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe."   *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp. 2d 1199, 1206 (E.D. Cal. 2008)).   This burden "is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Korn*, 536 F. Supp. 2d at 1204-05.   Indeed, a defendant's amount in controversy allegation is "normally accepted when invoking CAFA jurisdiction" unless contested by the plaintiff or questioned by the Court. *Dart Cherokee*, 574 U.S. at 87.

27.    In cases where statutory penalties are sought, "district courts . . .have looked to the statutory maximum . . .in determining whether the jurisdictional requirements of the CAFA have been met. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. at 1205.   In putative class actions seeking wage statement penalties and/or "waiting time" penalties (for alleged failure to pay all wages upon termination of employment) under California labor law, the amount in controversy for purposes of CAFA may be calculated by reference to the plaintiff's allegations and "defendant's own numbers." *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)(finding that the amount of waiting time penalties at issue could be "calculated by multiplying the number of former employees in the proposed class by thirty days' wages [which could] be calculated by multiplying the average number of hours worked by the average rate

**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL**

of pay"); *see also Korn v. Polo Ralph Lauren Corp*., 536 F. Supp. 2d 1199, 1206 (E.D. Cal. 2008)(finding that the defendant could establish CAFA's jurisdictional minimum by demonstrating that there were more than 5,000 putative class claims since the statutory maximum penalty for the plaintiff's claims was $1,000).

28.    As a preliminary matter, AllianceOne denies the validity and merit of the entirety of Plaintiff's alleged claims, the legal theories upon which they are ostensibly based, and the alleged claims for monetary and other relief that flow therefrom.  For purposes of removal only, however, and without conceding that Plaintiff or the putative class is entitled to any damages or penalties whatsoever, it is readily apparent that the aggregated claims of the putative class established, by a preponderance of evidence, that the amount in controversy exceeds the jurisdiction minimum of $5,000,000.

29.    Here, Plaintiff does not allege the amount in controversy in the Complaint. However, no limits are put on the amount in controversy. (Finley Decl., ¶ 5.)

30.    Plaintiff asserts claims for Plaintiff and the putative class for alleged unpaid wages, unreimbursed business expenses statutory penalties, civil penalties, restitution, injunctive relief, and attorneys' fees, based on allegations that Defendants have violated (and/or that Plaintiff and the putative class are entitled to wages and/or penalties under) Labor Code §§ 201, 202, 203, 204, 210, 226, 226.7, 510, 512, 1182.12, 1194, 1194.2, 1197, 1198, 2800, and 2802 … and California Business and Professions Code Section 17200 *et seq.* (Compl., ¶¶ 5-106.)

31.    Alleging an Unfair Competition Law ("UCL") violation may extend the statute of limitations for Plaintiff's and the putative class's meal period, rest period, overtime and minimum wage claims from three to four years from the filing of the Complaint, which, in this case, extends the statute of limitations to 2018.  *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products, Co.,* 23 Cal. 4th 163, 178-179 (2000) (four-year statute of limitations for restitution of wages under the UCL).

32.    While AllianceOne denies Plaintiff's factual allegations and denies that Plaintiff or the putative class that Plaintiff purports to represent is entitled to the relief for which

Plaintiff has prayed, it is clear that when even a fraction of the maximum potential values of the claims of Plaintiff and putative class members are aggregated, the allegations within Plaintiff's Complaint "more likely than not" place into controversy an amount in excess of $5 million.

33.    Plaintiff's claims are based on the allegations that AllianceOne: (1) failed to pay minimum wages; (2) failed to pay overtime wages; (3) failed to provide meal periods; (4) failed to provide rest periods; (5) Failed to reimburse business expenses; (6) Failed to provide accurate itemized wage statements; (7) failed to pay wages timely during employment; (8) failed to pay all wages due upon separation of employment; and (9) violated Business and Professions Code §§ 17200, *et seq.*

### 1. Statistics for Removal

34.    Plaintiff asserts a class period that runs from November 8, 2017 to the present. (Compl., ¶ 20.)   Between November 8, 2017 to approximately August 4, 2022, AllianceOne employed approximately **516** current and former non-exempt California employees who worked approximately **20,221** workweeks.[3] (Farnschlader Decl., ¶ 9. )

35.    From November 8, 2017 to approximately August 4, 2022, the average hourly rate of AllianceOne's California, non-exempt employees was approximately **$14.41**. (Farnschlader Decl., ¶ 10. )

### 2. Plaintiff's Second Cause of Action for Failure to Pay Overtime Places at Least $874,356.04 in Controversy.

36.    By way of Plaintiff's second cause of action, Plaintiff and the putative class seek allegedly unpaid wages at overtime wage rates pursuant to California Labor Code §§ 510, 1194 and 1198. (Compl., ¶¶ 44 - 55.)  As realleged under Plaintiff's Second Cause of Action in support of her failure to pay overtime, Plaintiff claims AllianceOne failed to pay minimum wages and overtime wages for hours worked, and alleges that she and

---

[3] There are 516 putative class members. Workweeks were approximated by adding the weeks worked by each putative class member based on the duration of their employment during the putative class period. For employees that are still employed, the duration of their employment was assumed to end on August 4, 2022.

**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL**
65581576;1

the putative class were required to "work in excess of eight (8) hours in a day, forty (40) hours in a week, and/or on a seventh consecutive day of work, entitling them to overtime wages," and that AllianceOne "failed to pay Plaintiff and Class Members overtime wages for all overtime hours worked."[4] (*Id.* at ¶¶ 4, 51-52.) Section 510 of the California Labor Code requires payment of one-and-one half times an employee's regular hourly rate for hours worked in excess of eight hours in one day or forty hours in a week. *See* Cal. Lab. Code § 510. The Code further entitles any employee "receiving less than . . . the legal overtime compensation . . .to recover the balance of the full amount of . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." *Id.* § 1194.

37.     Plaintiff does not state the amount of unpaid overtime she and the putative class worked each week, but claims that "Defendants engaged in a systematic pattern of wage and hour violations under the California Labor Code and Industrial Welfare Commission ("IWC") Wage Orders." (Compl., ¶¶ 3, 101.)   To determine the monetary amount in controversy for the overtime claim, the total number of hours worked unpaid by the putative class that would have been considered overtime hours is multiplied by one and one-half times their respective regular rates of pay rate in effect during the time the overtime was allegedly worked. *See* Cal. IWO 9-2001, § 3(A)(1). A reasonable reading of Plaintiff's unpaid overtime allegations supports AllianceOne's assumption that the Complaint places at least one hour of unpaid overtime per putative class member per workweek. **Between November 8, 2017 and August 4, 2022, AllianceOne's non-exempt (hourly-paid) employees in California have worked at least 20,221 workweeks at an average hourly rate of $14.41.** Therefore, under Plaintiff's theory that Plaintiff and putative class members are owed unpaid overtime compensation, and conservatively assuming two hours of unpaid overtime compensation per workweek, Plaintiff's overtime claim places at least **$874,356.04** in

---

[4] Plaintiff also alleges failure to pay double time, but the assumptions made herein are based only on the average regular rate of overtime (*i.e.* 1.5 times the average regular rate of pay).

**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL**
65581576;1

controversy: that is, the $21.62 average overtime rate ($14.41 x 1.5), multiplied by 2 hours of unpaid overtime hours per week, multiplied by 20,221 workweeks.

**3.**   **Plaintiff's Third and Fourth Causes of Action for Failure to Provide Meal and Rest Periods Places at Least $1,165,538.44 in Controversy.**

38.   Plaintiff alleges that, "Plaintiff and Class Members did not receive compliant meal periods for working more than five (5) and ten (10) hours per day because their meal periods were missed, late, short, interrupted, and/or they were not permitted to take a second meal period." (Compl., ¶ 61.)  Plaintiff alleges that, "Defendants failed to pay Plaintiff and Class Members meal period premiums for missed, late, and/or short meal period premiums for missed, late, and/or short meal periods pursuant to Labor Code § 226.7(b) and section 11 of the applicable IWC Wage Order." (*Id*. at ¶ 63.) Plaintiff further alleges that, "Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked, including working in excess of ten (10) hours in a day, because they were required to work through their rest periods and/or were not authorized to take their rest periods. (Compl., ¶ 68.) Plaintiff alleges that, "Defendants failed to pay Plaintiff and Class Members rest period premiums for missed, late, and/or interrupted rest periods pursuant to Labor Code § 226.7(b) and section 12 of the applicable IWC Wage Order." (Compl., ¶ 70.)

39.   Labor Code Section 512(a) states that non-exempt employees must be provided an uninterrupted meal period of not less than 30 minutes for a work period of more than five hours.  Labor Code Section 226.7(b) states that if an employer fails to provide an employee a meal or rest period in accordance with state law, the employer shall pay the employee one additional hour of pay for each workday that the meal or rest period is not provided.  The Complaint alleges that AllianceOne failed to pay Plaintiff and Class Members this additional hour of pay when required meal and rest periods were not provided. (Complaint, ¶¶ 63, 70.)

40.    If both a meal period *and* a rest period are denied to an employee, the employee can recover "two premium payments per workday – one for failure to provide one or more meal periods, and another for failure to provide one or more rest periods." *Al-Najjar v. Kindred Healthcare Operating, Inc.,* No. 17-CV-6166-PSG-FFMx, 2017 WL 4862067, at *4 (C.D. Cal. Oct. 26, 2017), citing Labor Code § 226.7.

41.    AllianceOne's records show that between November 8, 2017 to August 4, 2022, putative class members have worked at least 20,221 workweeks at an average hourly rate of $14.41.  AllianceOne is informed and believes that such employees' work days on average consisted of more than five hours per day.

42.    For purposes of assessing the amount in controversy, Plaintiff's allegations support a 100% violation rate with respect to claims of unprovided meal and rest period. *Muniz v. Pilot Traveler Centers LLC,* No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007)(where plaintiff does not allege facts specific to the circumstances of allegedly missed meal and/or rest periods, defendant may use 100% violation rate in calculating the amount in controversy).  Nevertheless, AllianceOne uses only a conservative assumption that Plaintiff's allegations place damages in controversy based on at least an average of at **least two unprovided meal periods and two unprovided rest periods per employee per workweek**.  Using these estimates, Plaintiff's allegations would create class liability for at least four hours of premium pay for each week worked by a non-exempt employee – two for the alleged meal period violations and two for the alleged rest period violations.  Therefore, using the average hour rate of $14.41, the meal and rest break claims place at least **$1,165,538.44** in controversy: 20,221 workweeks, multiplied by four hours of premium pay per week, multiplied by $14.41 average hourly rate.

### 4.    Plaintiff's Fifth Cause of Action for Failure to Reimburse Business Expenses Puts at Least $303,315 in Controversy.

43.    Plaintiff alleges that, "Plaintiff and Class Members incurred necessary business-related costs that were not fully reimbursed by Defendants." (Compl., ¶ 77.)  Plaintiff

**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL**
65581576;1

further alleges that, "Defendants failed to reimburse or indemnify Plaintiff and Class Members for their expenses due to Defendants' knowing and intentional failure to reimburse necessary business expenditures in connection with Plaintiff's and Class Members' work and job duties." (Compl.,¶ 78.)  "As a direct result, Plaintiff and Class Members have suffered and continue to suffer losses, and therefore seek complete reimbursement and indemnification of necessary business expenditures or losses, interest thereon at the required rate, and all reasonable costs in enforcing the rights under Labor Code § 2802, including, but not limited to attorneys' fees. (Compl., ¶ 79.)  Section 2802 mandates that employers pay all reasonable and necessary business expenses of their employees.  Cal. Lab. Code § 2802.

44.    Here, while Plaintiff provides no range of the amount at issue for failure to reimburse, it is clear that some payment for business expense was made.  Accordingly, AllianceOne's records show that it employed approximately 516 employees in California between November 8, 2017 and August 4, 2022 for a total of 20,221 workweeks.  By making a conservative assumption of $15 in unreimbursed business expenses per week,[5] that places at least **$303,315** in controversy (that is, $15 in weekly expenses at 20,221 workweeks).

### 5.    Plaintiff's Sixth Cause of Action for Failure to Provide Accurate Itemized Wage Statements Places at Least $161,000 in Controversy.

45.    Plaintiff's Complaint alleges that, "Defendants knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members" by, "among other things, the failure to correctly state the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the

---

[5] The $15 weekly phone bill is a conservative underestimate in light of the fact that the typical monthly cell phone bill in the U.S. is $127 or $31.75/week. *Are you paying too much for your phone?* https://www.cnbc.com/2021/06/15/how-to-save-money-on-your-phone-bill.html (last visited August 10, 2022).

number of hours worked at each hourly rate by Plaintiff and Class Members." (Compl., ¶ 82.)

46.    Under California Labor Code § 226(e), an injured employee can recover actual damages or penalties of $50 for the initial pay period in which a violation occurs and $100 for each violation in a subsequent pay period, up to an aggregate penalty of $4,000, for a knowing and intentional violation.

47.    There is a one-year statute of limitations on claims for wage statement penalties. Cal. Code Civ. Proc. § 340(a).  According to AllianceOne's records, AllianceOne employed at least 140 non-exempt employees in California between November 8, 2021 to present  and those employees were employed for a total of on average 12 pay periods between those dates based on a bi-weekly pay cycle.  Therefore, Plaintiff's claim for wage statement penalties places at least approximately $161,000 more in controversy ($50 for initial pay period and $100 for subsequent 11 subsequent penalty pay periods. [12 pay periods (based on an average number of workweeks for 140 putative class members at issue) - 1 x $100 + $50): calculated as (12 pay periods -1 one pay period) x $100 + $50) x 140].

**6.     Plaintiff's Eighth Cause of Action for Failure to Pay All Wages Due Upon Separation of Employment (Waiting Time Penalties) Places at Least $1,433,074.50 in Controversy.**

48.    Plaintiff alleges that "Defendants willfully failed to pay the Waiting Time Subclass all their earned wages upon termination, either at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ." (Compl. ¶ 93.)

49.    Plaintiff alleges the relevant time period for the Waiting Time Subclass is from November 8, 2018 and the date of class certification.[6] (Compl., ¶ 21.)

---

[6] AllianceOne does not concede, and reserves the right to contest, that the statute of limitations on Plaintiff's claim for waiting time penalties extends beyond the time limit proscribed under Labor Code § 203.

**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL**
65581576;1

50.     Labor Code § 203 provides that an employer who willfully fails to timely pay wages to an employee who discharged or quits, must pay, as a penalty, the "wages of the employee . . . from the due thereof . . .until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days."

51.     Allegations of "willful" failure to timely pay final wages based on alleged overtime and meal and rest break violations were sufficient to support assumptions of waiting time penalties at a 100% violation rate.  *See Garza v. Brinderson Constructors, Inc.*, No. 15-CV-02661-RMW, 2016 WL 1298380, at *4 (N.D. Cal. Apr. 4, 2016); *see also Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990 (N.D. Cal. July 10, 2014 ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . Because no averment in the complaint supports an inference that these sums were ever paid, Ford cannot now claim class members may be awarded less that the statutory maximum."); *see also Trigueros v. Stanford Fed. Credit Union*, No., 21-CV-01079-BLF, 2021 WL 2649241 (N.D. Cal. June 28, 2021)(finding a 100% violation rate on waiting time penalties to be reasonable when plaintiff tied her waiting time penalties to other claims and does not qualify her language to suggest that not all putative class members seek waiting time penalties.")

52.     According to AllianceOne's records, the employment of at least **442** putative class members terminated in California between November 8, 2018 and August 4, 2022. Based on Plaintiff's allegation that Defendant "willfully" failed to pay each putative member their full wages at the time of discharge "including, but not limited to, proper minimum wage and overtime compensation, meal period premiums and rest period premiums," Defendant may reasonably assume that each terminated putative class members was entitled to 30 days of continuous wages at 8 hours of standard pay per day. (Compl., ¶ 93.)  Thus, Plaintiff's claim for waiting time penalties places at least $1,433.074.50 in controversy ($14.41 per hour x 7.5 hour per day x 30 days x 442 employees).

**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL**

### 7.   Plaintiff's Seventh Cause of Action for Failure to Pay Timely During Employment Places At Least $978,500 in Controversy.

53.    Plaintiff alleges that, "Defendants failed to timely pay Plaintiffs and Class Members wages earned during the pay period." (Compl., ¶ 88.)  Plaintiff further alleges that, "[s]uch a pattern, practice and uniform administration of corporate policy regarding timely payment of wages as described herein is unlawful and creates an entitlement to recovery by Plaintiff in a civil action, for the unpaid balance of the full amount of damages owed, including interest thereon, penalties, attorneys' fees, and costs of suit according to the mandate of California Labor Code § 210." (Compl., ¶ 89.)

54.    Labor Code § 204 provides that if an employer cannot justify not paying an employee on her regular payday, then it will be charged with a penalty of: $100 for an initial violation (for each failure to pay each employee), and $200 for subsequent violations.

55.    According to AllianceOne's records, the average number of workweeks for each putative class member is approximately 40 workweeks.  Based on a biweekly pay period (20 pay periods), and assuming a 50% violation rate, there are 10 penalty pay periods at issue per putative class member. Thus, Plaintiff's claim for failure to timely pay wages places at least $978,500 in controversy [40 average workweeks for 515 putative Class members; 20 biweekly pay periods, assuming a 50% violation rate = 10 penalty pay periods.  [(10-1) x $200+ $100) x 515.]

### 8.   Plaintiff's Request for Attorneys' Fees Places Additional Amounts in Controversy, Exceeding the CAFA Threshold.

56.    In addition to seeking compensatory, economic, special, and liquidated damages, as well as statutory penalties and interest, Plaintiff also seeks recovery of attorneys' fees "to the extent permitted by law, including but not limited to, Code of Civil Procedure §§ 1021.5 and Labor Code § 226(e) and 1194." (Compl., Prayer for Relief.)  When an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes.

**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL**
65581576;1

*See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018)(holding that "if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy").  Courts in the Ninth Circuit "have treated a potential 25% fee award as reasonable" in wage and hour class actions removed under CAFA. *See Anderson v. Starbucks Corp.*, No. 3:20-CV-001178-JD, 2020 WL 7779015, at *4 (N.D. Cal. Dec. 31, 2020).

57.    The including of attorneys' fees would add approximately $1,228,945.99 to the amount in controversy, calculated as 25% of   $4,915,783.98 (*i.e.* the sum of $874,356.04 for the overtime claim, $1,165,538.44 for the meal and rest break claims, $1,433,074.50 for the waiting time claim, $161,000 for the itemized wage statement claim, $978,500 for the failure to timely pay wages claim, and $303,315 for the expense reimbursement claim).  Accordingly, the grand total in controversy $4,915,783.98, including attorneys' fees, totals at least $6,144,729.97.

| Claim | Violation Rate | Damages |
|---|---|---|
| Failure to Pay Overtime | Two hours of unpaid overtime hours per week | $874,356.04 |
| Failure to Provide Complaint Meal and Rest Period Premiums | Two missed meal periods per class member per week; Two missed rest period per class member per week | $1,165,538.44 |
| Unreimbursed Business Expenses | | $303,315 |
| Failure to Provide Accurate Wage | Twelve pay periods of inaccurate wage | $161,000 |

| Statements | statements for 140 Class Members | |
|---|---|---|
| Failure to Provide Wages Due Upon Separation | Thirty days' wages for 442 former employees | 1,433,074.50 |
| Failure to Pay Wages Timely During Employment | Ten pay periods for 512 class members | $978,500 |
| Attorneys' Fees | 25 percent of damages | $1,228,945.99 |
| **Total** | | **$6,144,729.97** |

## IV. <u>VENUE</u>

58.    This action was originally filed in the Superior Court for the County of San Diego.  Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompassed the county in which this action has been pending.

## V. <u>NOTICE</u>

59.    Alliance one will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which this action is pending, as required under 28 U.S.C. § 1446(d).

## VI. <u>CONCLUSION</u>

60.    Removal to this Court is proper under CAFA jurisdiction.  If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present a brief oral argument in support of its position that this case is subject to removal.

DATED:   August 11, 2022            **AKERMAN LLP**


                                    By: _/s/ O. Mishell Parreno Taylor_
                                        O. Mishell Parreno Taylor
                                        Kevin Finley
                                        Attorneys for Defendant
                                        ALLIANCEONE INCORPORATED

**DEFENDANT ALLIANCEONE INCORPORATED'S NOTICE OF REMOVAL**
65581576;1